UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| URSULA MAYES, CIELO JEAN GIBSON, JOANNA KRUPA, LUCY PINDER, and KATARINA VAN DERHAM, <br><br> Plaintiffs, <br><br> - against - <br><br> 490 HABITAT, INC. d/b/a THE OASIS GENTLEMEN'S CLUB and SAMUEL RIPPS, <br><br> Defendants. | Case No. _____ <br><br><br> COMPLAINT <br><br> (Jury Trial Demanded) |

Plaintiffs URSULA MAYES, CIELO JEAN GIBSON, JOANNA KRUPA, LUCY PINDER, and KATARINA VAN DERHAM (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants 490 HABITAT, INC. d/b/a THE OASIS GENTLEMEN'S CLUB and SAMUEL RIPPS (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, actresses and/or businesswomen, in order to promote their strip club, The Oasis Gentlemen's Club ("Oasis" or, the "Club"), located in Smithtown, New York.

2. As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), prohibiting false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

1

protects a person's right to privacy and publicity; and c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349), which prohibits deceptive business practices.

3. In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs seek an Order from this Court permanently enjoining Defendants from using their Images to promote Oasis, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6. According to publicly available records, defendant 490 Habitat, Inc. ("490 Habitat"), is a corporation formed under the laws of the state of New York, with a principal place of business located at 490 West Jericho Turnpike, Smithtown, New York 11787. This is also the address of Oasis.

7. Upon information and belief, defendant Samuel Ripps ("Ripps") is a resident of the State of New York, and is, and at all relevant times was, the owner, principal and/or chief executive 490 Habitat.

8. Venue is proper in the United States District Court for the Eastern District of New York because Defendants' principal place of business is located within this District, a significant portion of the alleged causes of action arose and accrued in this District, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in this District.

## PARTIES

*Plaintiffs*

9.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

10.    Plaintiff Cielo Jean ("CJ") Gibson ("Gibson"), is a well-known professional model, and a resident of Los Angeles County, California.

11.    Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Santa Barbara County, California.

12.    Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of the United Kingdom.

13.    Plaintiff Katarina Van Derham ("Van Derham") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

14.    According to publicly available records, defendant 490 Habitat is a corporation organized under the laws of the State of New York, has a principle place of business at 490 West Jericho Turnpike, Smithtown, New York, and operates Oasis from that location.

15.    Upon information and belief, defendant Ripps a resident of the State of New York.  Ripps is identified by the New York Department of State - Division of Corporations, as the Chief Executive Officer of 490 Habitat.  Upon information and belief, Ripps, in his capacity as C.E.O. of 490 Habitat, maintains operational control over Oasis, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

16.    As set forth immediately below, each Plaintiff is an well-known professional model, actress, and/or businesswoman who earns her livelihood modeling and selling her Images

3

to companies, magazines and individuals for the purpose of advertising products and services.

17. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Oasis.

19. In the case of each and every Plaintiff, such appearance was false.

20. Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

21. Mayes is a well-known model whose career started with a spread in *Maxim* magazine, and who has appeared in countless publications since then, including *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire*, and many more. Mayes has appeared on television on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*, and has appeared in commercial campaigns for Coronet Diamonds, Volkswagen, Subaru, and Bacardi, to name a few. She was also the cover model and star of the game *Juiced 2: Hot Import Nights*, and likewise serves as a paid spokes model for a global events company.

22. That we know of, Mayes is depicted in the photos in Exhibit "A" in order to promote Oasis. This misappropriated Image of Mayes was intentionally altered to make it

4

appear that Mayes was a stripper working at Oasis, or that she endorsed the Club. In the case of one iteration of the Image, that false appearance was bolstered by the copy Defendants placed beside, or within, the misappropriated Image, which states: "Starting this week, We're bringing SUNDAYS back!! New Girls!! New Team!!." (Ex. A at 1). Moreover, Defendants used that same misappropriated Image of Mayes in posters and/or video, which were placed and/or ran above the bar at Oasis, and then published on the Oasis web page. (Id. at 2). The clear implication of these photos is that Mayes was either a stripper working at Oasis, or that she endorsed the Club.

23. Mayes has never been employed at Oasis, has never been hired to endorse Oasis, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

24. Gibson is an extremely successful model who got her start in the industry when she won the *Import Turner* magazine Model Search. Gibson has a massive motor sport following, and is currently the model for the Falken Drift Team and SBT, Inc. (Short Block Technologies), as well as being a Top Rank Boxing model. Gibson has been seen in the pages of *FHM*, *American Curves* (cover), *Supreme*, *MuscleMag International* and *Muscle & Fitness*, and has over 48,000 Instagram followers.

25. That we know of, Gibson is depicted in the photos in Exhibit "B" in order to promote Oasis. This misappropriated Image of Gibson was intentionally altered to make it appear that Gibson was a stripper working at Oasis, or that she endorsed the Club, a false appearance bolstered by the copy beside the stolen Image, which reads: "Think you have what it takes to Work in a Gentlemen's Club? We are looking for NEW or EXPERIENCED Dancers or Bartenders. We're located right in the Heart of Smithtown and is one of the most oldest and well

established Gentlemen's Club on the Island.  PLEASE SEND US A MINIMUM of 2 RECENT PHOTOS, A FACE AND FULL BODY SHOT PREFERABLE ALONG WITH YOUR CONTACT INFORMATION.  EMAIL US TODAY employment@theoasisli.com."  The clear implication of these photos is that Gibson was either a stripper working at Oasis, or that she endorsed the Club.

26.     Gibson has never been employed at Oasis, has never been hired to endorse Oasis, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.     Krupa is a world-renowned model, actress, and television personality.  As an actress, Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, and the television show *Superstars*, and also appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*.  In addition, since 2010 Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*.  As a model, Krupa has twice appeared on the cover of *Playboy*.  She has also appeared on numerous other magazine covers, including *Personal*, *Steppin' Out*, *Envy*, *Shape*, *FHM*, *Stuff*, *Inside Sport*, *Teeze*, and *Maxim*.  Krupa has been named the "Sexiest Swimsuit Model in the World," and in 2011 Maxim ranked her #55 in its 2011 Hot 100.  In 2004-2005, she was voted German's Maxim Model of the Year.  Krupa also models for ads with PETA.

28.     That we know of, Krupa is depicted in the photos in Exhibit "C" to promote Oasis on its Facebook page.  This misappropriated Image of Krupa in a bikini was used to promote the Oasis July 4th party, which Oasis promoted as "The biggest party on LI is at The Oasis!!"  Beside the misappropriated Image of Krupa, Defendants also wrote: "SHOT SPECIALS EVERY HOUR ON THE HOUR FREE DRINKS OR CHAMPAGNE WITH VIP DANCES.  OVER 15

BEAUTIFUL GIRLS AND THE RETURN OF DJ SEAN." In addition, and in a further attempt to promote their strip club, Defendants placed an "Oasis" tattoo on Krupa's lower stomach. (*Id.*).

29. Krupa has never been employed at Oasis, has never been hired to endorse Oasis, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30. Pinder is an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has been featured in hundreds of magazines, including *FHM, Loaded, Nuts*, and the *Daily Star*, as well has appeared on numerous occasions on the *FHM* "100 Sexiest Women in the World" list. In addition, Pinder has an established and developing acting career with many TV appearances and Film credits, and has appeared on shows such as *I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Dream Team and Bo! in the USA*. Pinder was a contestant on *Celebrity Big Brother*, had starring roles in films such as *Strippers vs Werewolves, The Seventeenth Kind, Age of Kill and Warrior Savitri*.

31. That we know of, Pinder is depicted in the photos in Exhibit "D" to promote Oasis on its Facebook page and website. These misappropriated Images of Pinder were intentionally altered to make it appear as though Pinder was a stripper working at Oasis, or that she endorsed the Club. This false appearance was bolstered by the copy placed by Defendants beside, or within, the misappropriated Images of Pinder.

32. Pinder has never been employed at Oasis, has never been hired to endorse Oasis, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

7

33. Van Derham is a successful model, actress, philanthropist, and entrepreneur. Van Derham has graced over 60 magazine covers and appeared in over 600 media outlets including CNN, FOX, and NBC. She has appeared in 17 national and international print and TV commercials, has been voted one of the 100 sexiest women in the world by magazines on three different continents, and has made history by being the only St. Pauli Girl spokesmodel to ever be re-elected. As an actress, Van Derham has appeared on "Entourage", "Unbelievable, "15 Minutes," "Redline," "CSI" and "Monk," and in music videos for Bobby Brown, Ja Rule, Andy, Big and Rich, among others. Katarina is a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine VIVA GLAM, established in 2012.

34. That we know of, Van Derham is depicted in the photo in Exhibit "E" to promote Oasis on its Facebook page. This misappropriated Image of Van Derham was intentionally altered to make it appear that Van Derham was either a stripper working at Oasis, or endorsed the Club, a false depiction is bolstered by the copy Defendants' placed beside the stolen Image of Van Derham.

35. Van Derham has never been employed at Oasis, has never been hired to endorse Oasis, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

36. Upon information and belief, Defendants operated Oasis during the relevant time period, where it engages or has engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

37. Upon information and belief, and in furtherance of its promotion of Oasis, Defendants own, operate and control Oasis' social media accounts, including the its Facebook,

Twitter, and Instagram accounts.

38. Defendants used the Oasis Facebook, Twitter, and Instagram accounts to promote Oasis, and to attract patrons thereto.

39. Defendants did this for their own commercial and financial benefit.

40. Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Oasis, or endorsed same.

41. Defendants used Plaintiffs' Images, and created the false impression that they worked at or endorsed Oasis in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

42. As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Oasis, and at no point have any of the Plaintiffs ever endorsed Oasis.

43. All of Defendants' activities, including their theft of Plaintiffs' Images, and their alteration and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate any Plaintiff for its use of their Images.

44. As such, Plaintiffs have never received any benefit for Defendants' use of their Images.

*Standard Business Practices in the Modeling Industry*

45. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

46. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Theft of Plaintiffs' Images*

47. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote their Club by and through various marketing and promotional mediums including, without limitation, Oasis' Facebook and Instagram pages, and the Club's website.

48. Defendants showcased Plaintiffs' Images on Oasis' social media pages in order to create the false impression that Plaintiffs worked at the Club, or endorsed the Club.

49. Defendants did so in order to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

50. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

51. Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers. This is especially so insofar as each Plaintiff's Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is

that they are each strippers.

52. At no point were any of the Plaintiffs ever affiliated with Oasis or Defendants.

53. Each of Plaintiffs' Images was used without her consent.

54. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

55. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

56. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

57. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

58. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

59. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

61. Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Oasis, or endorsed Oasis.

62. This was done to promote and attract clientele to Oasis, and thereby generate

11

revenue for the Defendants.

63. Thus, this was done in furtherance of Defendants' commercial benefit.

64. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Oasis, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Oasis.

65. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Oasis.

66. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of Oasis, and the goods and services provided by Oasis.

67. Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

68. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69. As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on Oasis social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Oasis, or endorsed Oasis.

70. At all relevant times, the Oasis social media accounts were used and operated by Defendants' for advertising and trade purposes.

71. The Oasis social media accounts were designed to attract business to the Club,

and generate revenue for Defendants.

72. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

73. At no point did Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their social media accounts.

74. Defendants were at all relevant times aware that they never received any Plaintiff's permission or consent to use her Images on any social media account, or any other medium, in order to promote the Club.

75. At no point did Defendants ever compensate Plaintiffs for their use of the Images.

76. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

77. Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs have been damaged in an amount to be determined at trial.

78. In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

79. In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

## THIRD CAUSE OF ACTION
**(Violation of N.Y. General Business Law § 349:
N.Y. Deceptive Trade Practices Act)**

80. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81. Defendants operated Oasis social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

82. Defendants published Plaintiffs' Images on Oasis social media accounts in order to create the false impression with the public that Plaintiffs were either strippers working at the Club, or endorsed the Club.

83. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

84. As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

85. Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent, and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Club, or endorsed the Club.

86. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the Oasis social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

87. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and

exemplary damages.

## DEMAND FOR JURY TRIAL

88.   Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through third causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c)  For punitive damages, in an amount to be determined at trial;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e)  For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
March 7, 2018

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
John V. Golaszewski, Esq.
1745 Broadway, 17th Floor
New York, New York
T: 855.267.4457
F: 855.220.9626

*Attorneys for Plaintiffs*