UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
URSUALA MAYES, CIELO JEAN GIBSON,
JOANNA KRUPA, LUCY PINDER, and
KATARINA VAN DERHAM,

                            Plaintiffs,

                                                          **REPORT &amp;
RECOMMENDATION**

            -against-                                             18-CV-1427 (SJF) (GRB)


490 HABITAT, INC. d/b/a THE OASIS
GENTLEMEN'S CLUB and SAMUEL
RIPPS,

                            Defendants.

------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

       Pending before the undersigned, on referral from the Honorable Sandra J. Feuerstein, is plaintiffs' motion for default judgment as against defendant 490 Habitat, Inc. d/b/a The Oasis Gentleman's Club ("Oasis").[1]  Docket Entry ("DE") 12.  Plaintiffs are models and actresses seeking damages for defendants' alleged misappropriation of their images in connection with certain advertisements which were displayed.  DE 1 at ¶ 1.  For the reasons that follow, the undersigned respectfully recommends that the Court enter a default judgment in favor of the plaintiffs.  However, because plaintiffs have failed to sustain their burden of proving damages, it

---

[1] Apparently, the individual defendant, Samuel Ripps, was never properly served with this action, and the time to do so has long since expired.  Plaintiffs have indicated that, should the Court grant default judgment, they expect to dismiss against Ripps. DE 16.  Should plaintiffs decide that further litigation against Ripps is warranted, counsel is directed to so advise the Court during the objection period; otherwise it is respectfully recommended that the matter be dismissed as against Ripps.

1

is further recommended that no damage award or injunctive relief issue.

## STATEMENT OF FACTS

The Complaint in this matter was filed on March 7, 2018.  DE 1.  According to that document, plaintiffs are well-known models and actresses who have starred in noteworthy television programs and appeared in magazines, including *Maxim*, *Vogue, Elle, Cosmopolitan*, *Deal or No Deal*, *Dancing with the Stars*, *The Real Housewives of Miami*, *The Weakest Link, Entourage*, and *Monk*.  *See id.* at ¶¶ 21–33.  Plaintiffs allege that Oasis, an adult entertainment club, misappropriated their images by displaying them on social media platforms and websites, without consent.  *Id.* at ¶¶ 47–58.  This, plaintiffs allege, "created the false impression that [plaintiffs] worked at or endorsed Oasis in order to receive certain benefits therefrom."  *Id.* at ¶ 41.  Each plaintiff alleges that she was a "well-known professional model," cites extensive modeling credentials, and that, as a result, the misappropriation of plaintiffs' images was intended to "mislead potential customers" and "did, in fact, cause consumer confusion."  *Id.* at ¶¶ 9–13, 64, 66.

Oasis was timely and properly served.  *See* DE 7.  It failed to file an answer, and the clerk entered a notation of default pursuant to Fed. R. Civ. P. 55(a) as to Oasis and Ripps, the individual defendant.  DE 10.[2]

Plaintiffs filed then filed the instant motion, seeking default judgment—including permanent injunctive relief and an award of damages—against Oasis.  DE 12.  In support of their claims for damages, plaintiffs submit the declaration of Stephen Chamberlin, a purported expert, who rendered an opinion as to the damages suffered by each plaintiff.  DE 12-3 at ¶ 6.

---

[2] Despite filing a certificate of service as to Ripps, as noted above, plaintiffs now report that he was not properly served.  DE 16.  Therefore, the notation of default should be vacated as to Ripps.

Chamberlin reviewed "numerous factors" in an effort to establish the "fair market value of each [plaintiff's] image for the specific appropriated use by the Club." *Id.* at ¶¶ 11–12. In his declaration and expert report, he devises a per image rate based on what he describes as a "market value" for each plaintiff based on her experience, and then multiplies this market value by the "uses" by the defendants. This market value, Chamberlin states, is the "compensatory, or actual, damages for each individual [plaintiff]." *Id.* at ¶ 13. Chamberlin opines that the plaintiffs are entitled to a damages award of "a minimum" of $545,000, itemized as follows.

| Plaintiff | Rate | "Usage" | Total |
|---|---|---|---|
| Ursula Mayes | $20,000 | 4 | $80,000 |
| Cielo Jean Gibson | $15,000 | 3 | $45,000 |
| Joanna Krupa | $75,000 | 4 | $300,000 |
| Lucy Pinder | $20,000 | 3 | $60,000 |
| Katarina Van Derham | $30,000 | 2 | $60,000 |

*See id.* This opinion follows.

## DISCUSSION[3]

### I.   Default Judgment Standard

Federal Rule of Civil Procedure ("Rule") 55 "provides a two-step process for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)

---

[3] Though required by this Court's rules, plaintiffs have failed to file a memorandum of law in support of its motion. *See* E.D.N.Y. Local Civ. R. 7.1(a). Though the undersigned has exercised his discretion to overlook this violation of the rules, such failure is surprising in light of the legal complexities presented by this matter, some of which have been previously litigated by counsel at bar on behalf of at least one or more of the same plaintiffs.

(internal quotation marks and citation omitted). Pursuant to Rule 55(a), the Clerk of the Court first enters a default against a defendant by noting the defaulting party's failure to plead or "otherwise defend." Fed. R. Civ. P. 55(a). Second, after the Clerk of the Court enters this default, if the party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may enter a default judgment. *Id.*

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint," except for those relating to damages.[4] *Mickalis Pawn Shop, LLC*, 645 F.3d at 137 (internal quotation marks and citation omitted); *see Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Although all well-pleaded allegations are deemed to have been admitted upon a default, that does not necessarily mean that liability as a matter of law has been sufficiently pled by the plaintiff." *Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-CV-5365 (NGG) (RLM), 2013 WL 5970613, at *6 (E.D.N.Y. Nov. 8, 2013); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of the Joint Board's factual allegations as true and draw all reasonable inferences in its favor, . . . but it is also required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"); *Mickalis Pawn Shop, LLC*, 645 F.3d at 137, n.23 ("[A] district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief"). In determining whether a default judgment should be entered, the court has the "responsibility to ensure that the factual

---

[4] If the allegations in the complaint suffice to establish liability, the court then conducts an inquiry to determine the amount of damages to a "reasonable certainty." *Bounty Fresh, LLC v. J N.Y. Produce, Inc.*, No. 12-CV-2415 (FB)(JO), 2014 WL 1010833, at *2 (E.D.N.Y. Mar. 14, 2014); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

4

allegations [in the plaintiff's pleadings], accepted as true, provide a proper basis for liability and relief." *J & J Sports Prods., Inc. v. El Coyote Carpau, Inc.*, No. 14-CV-3642 (PKC), 2014 WL 5147629, at *2 (E.D.N.Y. Oct. 14, 2014) (internal quotation marks and citations omitted) (alteration in original). That is to say, "[a]fter default . . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.*; *see also Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (observing that a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant"). "Accordingly, the Court must determine whether the well pleaded allegations in the Complaint, admitted by [d]efendants on this motion, are sufficient to establish liability for the claimed causes of action." *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255 (KMW), 2014 WL 2781846, at *2 (S.D.N.Y. June 19, 2014) (internal quotation marks and citation omitted).

## II. Analysis of Causes of Action

### a. Lanham Act

Plaintiff's first cause of action purports to assert claims of false endorsement under Section 43 of the Lanham Act, 15 U.S.C. §1125, *et seq.* This theory, applied to a nearly identical set of facts—and in a case brought on behalf of, *inter alia*, one of the plaintiffs here—has been examined in some detail. *Toth v. 59 Murray Enters., Inc.*, No. 15 CIV. 8028 (NRB), 2019 WL 95564, at *1 (S.D.N.Y. Jan. 3, 2019) (granting summary judgment in favor of one plaintiff, and for defendant as to all others). As the court in *Toth* held:

> Section 43 of the Lanham Act prohibits the use of a protected mark in a way that is likely to cause consumer confusion "as to the origin, sponsorship, or approval of [defendants'] goods." 15 U.S.C.A. § 1125 (a)(1)(A) (emphasis added). In order to establish a claim for false endorsement under Section

5

> 43(a), plaintiffs must prove that defendants: "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services."

*Id.* at *5 (collecting cases). That decision found, after analyzing the *Polaroid* factors, that the element of consumer confusion in this context "turns on whether plaintiffs are sufficiently recognizable such that their appearance in the advertisements is likely to confuse consumers." *Id.* at 10. Judge Buchwald determined on the evidence presented that one plaintiff "established sufficient recognizability." *Id.* The Court further determined that "the remaining plaintiffs [including plaintiff Mayes who is also part of the instant case] have failed to demonstrate sufficiently strong marks and no reasonable juror could find that the use of their images in the Clubs' advertisements is likely to cause consumer confusion." *Id.*

Of course, the instant default judgment motion provides a highly different context, in that, through its default, the defendant "admits all well-pleaded factual allegations in the complaint." *Mickalis Pawn Shop, LLC,* 645 F.3d at 137. While this would not apply to a legal conclusion—such as "consumer confusion"—defendant effectively admits all of the underlying facts which leads to that conclusion, including the fame, success and recognizability of each plaintiff, as clearly set forth in the complaint. *See Mayes v. Summit Entm't Corp.*, No. 1:16-CV-06533 (NGG) (ST), 2018 WL 566314, at *4 (E.D.N.Y. Jan. 18, 2018), *report and recommendation adopted in relevant part*, 287 F. Supp. 3d 200 (E.D.N.Y. 2018) (finding allegations nearly identical to those here were "more than sufficient to support a likelihood of consumer confusion" on motion to dismiss). Thus, as a result of defendant's default, plaintiffs have established liability under the Lanham Act.

    b. <u>New York General Business Law Section 349</u>

Plaintiffs' second cause of action purports to set forth claims of deceptive trade practices

under Section 349 of the New York General Business Law ("GBL"). Remarkably, this claim has been analyzed—and rejected—in another action before this Court also brought by plaintiff Mayes, *inter alia,* by the very same counsel handling the instant case.[5] *Mayes v. Summit Entm't Corp.*, 287 F. Supp. 3d 200 (E.D.N.Y. 2018). As Judge Garaufis observed "a plaintiff bringing a claim under Section 349 needs to allege: '(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result," but that, additionally, a non-consumer plaintiff "must allege that the defendant's actions harmed consumers or the public interest in a material respect." *Mayes,* 287 F. Supp. 3d at 205 (citations omitted).

The final requisite—that the purported deceptive act materially harmed consumers or the public interest—provides the difficulty in this context. In *DePinto v. Ashley Scott, Inc.*, 222 A.D.2d 288, 635 N.Y.S.2d 215, 217 (1st Dep't. 1995), the Appellate Division dismissed a claim of trademark infringement and unfair competition under Section 349, holding, in essence that allegations of consumer confusion were insufficient to support a Section 349 claim. *See also Mayes,* 287 F. Supp. 3d at 210 ("consumer confusion is not a harm to the public interest sufficient to support a claim under this law"). As the complaint here alleges nothing more than

---

[5] Notably, Judge Garaufis's opinion rejecting plaintiffs' GBL § 349 claim predates the filing of the complaint in this case, albeit only by a few days. *Compare Mayes*, 287 F. Supp. 3d 200 (E.D.N.Y. 2018) (signed March 5, 2018) *with* DE 1 (filed March 7, 2018). Of course, nothing prevented the plaintiffs from withdrawing these claims or, at a minimum alerting the Court to the existence of this highly relevant precedent. To the contrary, on this motion (filed many months after Judge Garaufis's opinion), plaintiffs expressly rely on their Section 349 theory without any further discussion or disclosure. *See* DE 12-1 at ¶ 8. Such omissions are particularly troubling in the context of a default judgment motion, where movants' counsel effectively acts *ex parte*. *Cf. Vill. of Freeport v. Barrella*, 814 F.3d 594, 609, n.60 (2d Cir. 2016) ("We remind counsel that attorneys have an ethical obligation to 'disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client'") (quoting N.Y. Rules of Prof. Conduct 3.3(a)(2)). Whether or not failure to disclose such information constitutes a breach of the well-known duty of candor or other ethical principles, prudence would counsel in favor of such disclosure.

consumer confusion, plaintiffs have failed to establish liability under Section 349.

    c. New York Civil Rights Law Sections 50-51

Finally, plaintiffs seek recovery under New York Civil Rights Law Sections 50-51. Section 50 of the New York Civil Rights law makes it a misdemeanor to "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person." N.Y. Civ. Rights Law § 50 (McKinney 2019). Section 51 creates a private right of action for violations of this section, allowing the maintenance of "an equitable action . . . to prevent and restrain the [offending] use" and permitting the award exemplary damages. N.Y. Civ. Rights Law § 51 (McKinney 2019).

In determining whether this claim has been adequately plead, the undersigned is not writing on a blank slate—the Appellate Division has examined the applicability of these sections to a nearly identical claim. In *Molina v. Phoenix Sound Inc.*, 297 A.D.2d 595, 596, 747 N.Y.S.2d 227, 228 (1st Dep't 2002), a fashion model sued an adult nightclub for including her image in its advertising flyers without consent. The Appellate Division observed that:

> In order to establish liability under New York Civil Rights Law, plaintiff must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent (see Civil Rights Law § 51).

*Id.* at 597. Finding that the allegations satisfied these elements, the Appellate Division reversed a lower court's grant of summary judgment in favor of defendant. *Id.*; *see also Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *7 (S.D.N.Y. Mar. 1, 2018) (upholding certain claims by fashion model for misappropriation of image under Sections 50 and 51). Thus, plaintiffs have, upon this motion for default judgment, established liability

8

under New York Civil Rights Law Sections 50-51.[6]

### III. Remedies

    a. Damages

"Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not." *Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349 (ARR) (VMS), 2013 WL 5210142, at *9 (E.D.N.Y. Sept. 13, 2013) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158)). "On a motion for default judgment, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded." *Day An Zhang v. L.G. Apparel, Inc.*, No. 09-CV-3240 (KAM), 2011 WL 900183, at *4 (E.D.N.Y. Feb. 18, 2011) (citations omitted), *adopted by,* 2011 WL 900950 (E.D.N.Y. Mar. 15, 2011). "In order to ascertain the amount of damages, the court must conduct an inquiry sufficient to establish them to a reasonable certainty, and documentary evidence can suffice in lieu of an evidentiary hearing." *Callier v. Superior Bldg. Servs., Inc.*, No. 09-CV-4590 (ILG) (JMA), 2010 WL 5625906, at *2 (E.D.N.Y. Dec. 22, 2010) (internal quotation marks and citations omitted). "A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*,

---

[6] This cause of action is governed by a one-year statute of limitations. *Bondar v. LASplash Cosmetics*, No. 12 CIV. 1417 (SAS), 2012 WL 6150859, at *6 (S.D.N.Y. Dec. 11, 2012) ("Pursuant to New York Civil Practice Law and Rules § 215(3), an action for a violation of the right of privacy under Section 51 must be brought within one year of the claim's accrual"). Based on a review of the dates appearing on the images attached to the complaint, several of the alleged misappropriations appear to be outside the limitations period. *See* DE1-1 at 2-4 (photos of plaintiff Mayes from 2013 seemingly added to website in 2016); at 10 (image of Krupa from 2013); at 35 (image of Van Derham from 2013 added to website in 2016). To the extent that at least some of the claims appear to barred by the statute of limitations, this issue could well defeat plaintiffs' motion as to those claims. *De Santis v. City of N.Y.*, No. 10 CIV. 3508 (JPO), 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014) (suggesting that the district court has a discretion—and perhaps an obligation—to raise statute of limitations questions *sua sponte* on a default judgment motion). In light of other recommendations made herein, the undersigned will not further burden the record on this issue.

9

No.12-CV-8268 (JPO), 2014 WL 6611560, at *6 (S.D.N.Y. Nov. 14, 2014) (citations omitted); *see also Granados v. Gold Coast Tennis, Inc.*, No. 12-CV-4016 (JFB), 2013 WL 3766582, at *3 (E.D.N.Y. July 16, 2013) ("To obtain damages related to a default judgment, a plaintiff must present admissible evidentiary proof of his alleged damages, unless the claimed amount is liquidated or susceptible to mathematical calculation") (internal quotation marks and citation omitted).

Plaintiffs' submission regarding damages prove, for a number of reasons, to be problematic and troubling.  On this motion, plaintiffs purport to seek only "actual" damages amounting to $545,000.  DE 12-1 ¶15.  The evidentiary basis for the relief sought is a lengthy declaration and report by Stephen Chamberlin, who characterizes these submissions as his "expert opinion . . . as to the fair and just compensatory, or actual damages owed to each Model for the use of their images by Defendants…"  DE 12-3 ¶ 6; *cf.* DE 11 (describing Chamberlin as "Plaintiffs' valuation expert").

Review of the submissions reveal seeming inconsistencies and substantial omissions.  For example, Chamberlin purports to expressly limit his opinion to "actual damages," noting that his opinion "does not include any estimation or opinion regarding the calculation of other damages, such as special, consequential, exemplary, or punitive damages."  DE 12-3 at ¶ 6.  With this in mind, he claims that his calculations provide "rates . . . based on the fair market value of each Model's image for the specific appropriated use by the Club but does <u>not</u> calculate the damage or possible end of their career, damage to reputation, or loss of other clients and advertisers by the Models being associated with this type of business."  *Id.* at ¶ 11 (emphasis original).  Yet it is plain that the "rates" he provides do, in fact, contain some element of consequential damages, because he states that "[i]n the unlikely event a Model of the caliber here would agree to such a

10

job and usage, there would be negotiated a substantial premium for the work to offset anticipated and expected losses of marketability." *Id.* at ¶ 9. Chamberlin also notes that:

> Each Plaintiff Model seeks modeling jobs that will enhance her stature, protect her reputation and image and not serve as a potential deterrent for commercial brands to affiliate with that Model. In my experience and expertise, having one's image used in a way that would appear to sponsor, sanction, endorse, support or denote participation in the events the Club is involved with would damage, harm and devalue the Model's individual careers due to the nature of the industry and product advertised by Defendants. Accordingly, not one of the Plaintiff Models would consider or agree to the use of their images by Defendants.

*Id.* at ¶ 8. Thus, the "negotiations" about which Chamberlin opines cannot be anything other than highly speculative hypotheticals. Put another way, despite his claimed years in the modeling industry, Chamberlin cannot have developed any expertise in such negotiations because they cannot possibly have taken place. Indeed, it is difficult to imagine circumstances in which a supermodel of international fame would negotiate with a local strip club to use her image in this fashion, such that Chamberlin's claim to expertise seems farfetched.

Although he generates compensation rates, his bases for these numbers are largely left to the imagination. His report contains little, if any, information about what these plaintiffs get paid for real jobs. And where Chamberlain does explain his methodology in calculating that which he dubs "fair market value," his assumptions are highly suspect. For example, in the case of Joanna Krupa, the complaint identifies a single use of Krupa's image by defendant. DE 1 at ¶ 28. This advertisement—the sole basis for Krupa's claims here—is seen below:

11



DE 1-1 at 10; DE 12-3 at 38.

In his "analysis," Chamberlin establishes a "minimum day rate" for Krupa of $75,000.[7] DE 12-3 at 39.  He then takes this rate and calculates $300,000 in damages for this single photo. *Id.*  He builds this number by multiplying $75,000 by four enhancements, as follows: (1) use of her image with the Oasis name (in other words, the entire ad); (2) use of that image on Oasis's Facebook page, though there is no evidence that it was used elsewhere; (3) the inclusion of language about drinks and VIP dances in that ad, to wit: the text contained in the dark blue ink in the center of the image above; and (4) the inclusion of a "digital tattoo" of the Oasis logo applied to Krupa's hip in the advertisement. *Id.*  As to the enhancement of the fee emanating from the language within the dark blue box, there seems no more reason to enhance her fee for this message than there might be for the text referencing "OVER 15 BEAUTIFUL GIRLS", or for that matter, "THE RETURN OF DJ SEAN."  There is nothing in Chamberlin's report

---

[7] There is no evidence offered that Krupa's actual day rate is $75,000.

suggesting that there is some established norm in the industry that the application of a digital tattoo warrants doubling a model's fee. Ultimately, even assuming there was a basis for applying his $75,000 hypothetical day rate to a single ad—and there is none presented—there is no reason given for his opinion that this particular ad, placed on a Facebook page, warrants quadrupling that rate.

His estimations with respect to plaintiff Gibson presents another problematic example. In this instance, Chamberlin somehow manages to calculate $45,000 in actual damages based upon a single use of her image in a help wanted ad posted by the Oasis, even though her minimum day rate was $15,000. *Id*. at 36. That the use of Chamberlin's image in a help wanted ad somehow warrants trebling of her putative day rate remains unexplained and is, perhaps, inexplicable.

This is not the first time, though, that Chamberlin's expert opinions have been deemed less than reliable. In *Toth*, Judge Buchwald found that Chamberlin "conjures up" damages numbers and "mischaracterizes [certain evidence] in such a way as to deceptively bolster [its] significance." *Toth*, 2019 WL 95564, at *12. Some of the Court's criticism focused on his analysis of the claims of plaintiff Mayes, also a plaintiff here. Chamberlin's had opined that Mayes was entitled to actual damages of $100,000, an amount, the Court found, that was more than double Mayes's annual income for modeling for 2011, 2012 and 2013, and more than 35 times the amount she had earned from a single photo shoot. *Id.* at *13. Given that Chamberlin calculated $80,000 in fair market actual damages in this case, similar problems are presented. The *Toth* decision criticized the "unreliability of Chamberlin's methodology," ultimately struck his report and testimony under a *Daubert*-type analysis and denied plaintiffs' damages claims. *Toth*, 2019 WL 95564, at *13.[8] Other courts have rejected Chamberlin's opinions as a basis to

---

[8] As with the adverse caselaw noted above, counsel failed to advise the Court on this motion that Chamberlin had been rejected as an expert witness. In an effort to establish his *bona fides*,

13

sustain similar damage claims, in certain cases by the very same plaintiffs at bar. *Lancaster. v. Ocala Hosp. Grp., LLC,* No. 16-cv-662, 2017 WL 2634775, at *4 (M.D. Fla. Apr. 11, 2017) (rejecting, on default judgment application, damages claims by plaintiffs Mayes and Gibson, among others, predicated on Chamberlin's hypothetical calculations); *Gibson v. BTS N., Inc.,* No. 16-24548-CIV, 2018 WL 888872, at *10 (S.D. Fla. Feb. 14, 2018) (deeming Chamberlin's opinion "problematic" and an insufficient basis upon which to award damages).[9]

Based on these authorities and the glaring deficiencies in Chamberlin's report—the sole basis for plaintiffs' claim for damages, plaintiffs have failed to meet their burden of establishing damages. Therefore, the undersigned recommends that no damages be awarded.

    b. <u>Injunctive Relief</u>

A permanent injunction is proper "following a default judgment so long as the moving party shows that 'it meets the prerequisites for issuance of an injunction,'" *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 298-99 (E.D.N.Y. 2015) (quoting *Harris v. Fairweather*, No. 11 Civ. 2152, 2012 WL 3956801, at *9 (S.D.N.Y. Sept. 10, 2012)), and the moving party shows it "is entitled to injunctive relief under the applicable statute." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946(JS)(AKT), 2015 WL 1299259, at *16 (E.D.N.Y. Mar. 23, 2015) (citing *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 118 (E.D.N.Y. 2010)). A court may issue an injunction where plaintiff demonstrates "actual success on the merits and irreparable harm." *Mun. Credit Union*, 126 F. Supp. 3d at 299.

---

Chamberlin included the *Toth* case on his Testifying Experience Table (which predated Judge Buchwald's decision). DE 12-3 at 29. It would, again, have been prudent to provide the Court with such information on this motion, particularly given the *ex parte* nature of this proceeding.
[9] At least one of these cases appear on Chamberlin's Testifying Experience Table, but no information was supplied to the Court concerning the adverse rulings.

14

The complaint seeks the imposition of injunctive relief, and plaintiffs could potentially be entitled to such an order. *See Yasin v. Q-Boro Holdings, LLC*, 27 Misc. 3d 1214(A), 910 N.Y.S.2d 766. 2010 WL 1704889 (N.Y. Sup. Ct. 2010) (granting permanent injunction based on New York Civil Rights Law Sections 50-51). On this motion, counsel states that "plaintiffs are entitled to an order permanently enjoining Defendants from using Plaintiffs' Images to promote their strip club, Oasis." DE 12-1 at ¶ 17. Tellingly, however, the proposed judgment proffered by plaintiffs makes no provision for equitable relief, seeking only a money judgment. *See* DE 12-4. More importantly, however, plaintiffs have made no showing on the issue of irreparable harm, which is required before an injunction may issue even in the context of a default. *See, e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (on default judgment application, "to obtain a permanent injunction, [the requesting party] must demonstrate (1) actual success on the merits and (2) irreparable harm."). Plaintiffs' failure to make any such showing, as well as the many other deficiencies in this motion, strongly weigh against the issuance of an equitable remedy. Therefore, to the extent that plaintiffs seek such relief, it is respectfully recommended that the application be denied.

    c. <u>Costs and Attorneys' Fees</u>

Finally, counsel summarily and conclusorily seeks the imposition of attorneys' fees in the amount of $5,400 and costs and disbursements in the amount of $6,440. DE 12-1 at ¶ 16. However, counsel fails to provide any documentation, itemization or other support for these figures.

    On the issue of costs, the undersigned has previously held:

> The Lanham Act provides for costs as an element of monetary recovery. *See* 15 U.S.C. § 1117(a). "Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act." *Prot. One Alarm,* 553 F.Supp.2d at 210. "Out-of-pocket litigation costs are generally recoverable if they are

15

> necessary for the representation of the client." *Tri–Star Pictures, Inc. v. Unger,* 42 F.Supp.2d 296, 306 (S.D.N.Y.1999). Such costs may include the filing fee, *Prot. One Alarm,* 553 F.Supp.2d 201, 210 (E.D.N.Y.2008); the costs of transcripts and messenger services, *Pastre v. Weber,* 800 F.Supp. 1120, 1123 (S.D.N.Y.1991); and the costs of photocopying, postage, exhibits, typing, transportation and parking fees, *Kuzma v. IRS,* 821 F.2d 930, 933 (2d Cir.1987). The costs of online research are considered an element of the attorney's fee award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 369 F.3d 91, 98 (2d Cir.2004) ("the charges for ... online research may properly be included in a fee award").

*Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 (JFB) (GRB), 2013 WL 5676582, at *9 (E.D.N.Y. 2013). In considering a request for an award of attorneys' fees, the standard is somewhat higher.

> The Lanham Act permits an award of reasonable attorneys' fees in exceptional circumstances. 15 U.S.C. § 1117(a). Exceptional circumstances include those "where a party has willfully misappropriated a mark or has defended an action in bad faith." *Champagne*, 36 Fed. App'x at 19.

*Id.* at *10; *see also Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F. Supp. 3d 137, 166 (E.D.N.Y. 2016) ("Courts have also granted attorneys' fees to prevailing Lanham Act plaintiffs where the defendant defaulted").

However, even if appropriate, to warrant an award of attorneys' fees, counsel must support its application with contemporaneous time records specifying relevant dates, time spent, and work done. *LaBarbera v. Clestra Hauserman, Inc.,* 369 F.3d 224, 226 (2d Cir. 2004). Plaintiffs have supplied no such information. Similarly, although a prevailing party is entitled to an award of costs under Fed. R.Civ. P. 54(d), a party seeking costs needs to provide documentation to assure the costs are reasonable. While plaintiffs have entirely failed to document any of its costs, the record reflects payment of a $400 filing fee. DE 1. Therefore, the undersigned recommends an award of costs in that amount. *Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (awarding $350 filing fee costs award where plaintiff failed to document any other costs).

16

## CONCLUSION

For the reasons set forth herein, it is hereby respectfully recommended that because defendant's default establishes liability, a default judgment may be entered. However, it is further recommended that, because plaintiffs have failed to establish entitlement to damages or injunctive relief, that no such relief be awarded, but that costs be awarded in the amount of $400.

As noted herein, should counsel for plaintiff believe that pursuing this matter further as to defendant Ripps is warranted, they shall so advise the Court during the Objection period. Should counsel fail to do so, it is further recommended that the Clerk's notation of default as to defendant Ripps be vacated and the matter dismissed as to him.

## OBJECTIONS

A copy of this Report and Recommendation has been provided to counsel for plaintiffs via ECF. **Counsel for plaintiffs is directed to serve a copy of this Report and Recommendation upon defendant by mail and file proof of service.** Any written objections must be filed with the Clerk of the Court within fourteen (14) days of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object)*; Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not

17

appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Mejia*, 2018 WL 4847199, at *1.

Dated: Central Islip, New York
       March 4, 2019

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge